# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:21-CV-00166-KDB-DSC

| | |
|---|---|
| DONALD MANN, | |
| Plaintiff, | |
| v. | **ORDER** |
| POWER HOME SOLAR, LLC, | |
| Defendant. | |

**THIS MATTER** is before the Court on Defendant Power Home Solar, LLC's ("PHS") Motion to Dismiss (Doc. No. 4). Plaintiff Donald Mann claims that PHS breached its contractual promise to pay him severance upon termination of his employment, thereby violating the Employee Retirement Income Security Act of 1974 ("ERISA") and North Carolina statutory and common law. PHS' motion contends that 1) Mann has failed to state a claim because ERISA is inapplicable to the enforcement of a severance provision in an individual employment contract and 2) his contract and statutory claims cannot proceed because PHS terminated Mann before he completed the full process of beginning his employment.

The Court has carefully considered this motion and the parties' briefs and exhibits. For the reasons discussed below, the Court finds that the requirements of ERISA do not apply in these circumstances. Therefore, because the only basis of this Court's jurisdiction is alleged to be "federal question" jurisdiction under 28 U.S.C. § 1331, the Court lacks subject matter jurisdiction over this action and declines to exercise supplemental jurisdiction over Plaintiff's state law claims in the absence of federal jurisdiction. Accordingly, the Court will dismiss this action without

1

prejudice, allowing the parties to resolve the merits of their employment dispute in the North Carolina state courts.

## I.     LEGAL STANDARD

None of the parties has specifically raised the issue of subject matter jurisdiction in this action. However, because it defines a court's power to adjudicate cases and controversies, whether a court has subject matter jurisdiction is a "threshold matter" that a court must consider prior to reaching the merits of a dispute. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95, (1998); *Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc*., 471 F.3d 544, 548 (4th Cir. 2006). "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist*., 475 U.S. 534, 541 (1986). No other matter can be decided without subject matter jurisdiction. *See United States v. Cotton*, 535 U.S. 625, 630, (2002); *U.S. v. Wilson*, 699 F.3d 789, 793 (4th Cir. 2012).

Subject-matter jurisdiction cannot be conferred by the parties, nor can a defect in subject-matter jurisdiction be waived or forfeited by the parties. *Id*. Accordingly, questions of subject-matter jurisdiction may be raised at any point during the proceedings and indeed must be raised *sua sponte* by the court when it appears that the court may lack jurisdiction. *See Wilson*, 699 F.3d at 793; *Brickwood Contractors, Inc. v. Datanet Engineering, Inc*., 369 F.3d 385, 390 (4th Cir. 2004). A court must dismiss an action pursuant to Federal Rule of Civil Procedure 12(h)(3) "if the court determines at any time that it lacks subject matter jurisdiction." *See* Fed. R. Civ. P. 12(h)(3). The plaintiff bears the burden of proving subject matter jurisdiction. *Richmond, F. & P.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) and there is no presumption that a federal court

2

Case 5:21-cv-00166-KDB-DSC   Document 10   Filed 02/28/22   Page 2 of 9

has subject-matter jurisdiction. *See Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999).

Plaintiff alleges that the Court has subject matter jurisdiction based on Federal question jurisdiction, 28 U.S.C. § 1331. Federal question jurisdiction arises only from "those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27–28 (1983). In this action, only one of Plaintiff's claims raises a federal question – the claim under ERISA. If the Court finds that Plaintiff's federal claim cannot proceed then federal question jurisdiction is lacking, and the court may also decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 394 (4th Cir. 2012).

## II. FACTS AND PROCEDURAL HISTORY

This action arises from PHS' alleged hiring of Mann, a resident of Texas, to be its Senior Director of Marketing in Mooresville, North Carolina. Accepting the allegations of the Complaint as true,[1] in or before July 2021, PHS began recruiting Mann for a senior level marketing position. (Doc. 1 at ¶ 8). After significant negotiations, including specific discussions concerning Mann's

---

[1] A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering such motions, the court accepts all well-pled facts as true and draws all reasonable inferences in Plaintiff's favor. *See Conner v. Cleveland Cty., N. Carolina*, No. 19-2012, 2022 WL 53977, at *1 (4th Cir. Jan. 5, 2022). In so doing, the Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019).

3

request to be paid severance in the event of the termination of his employment without cause, PHS and Mann both signed a written "offer letter" dated July 6, 2021 that offered Mann the position of Senior Director of Marketing, contingent only on "(a) completion and signature of all standard new-hire documentation and delivery to a Human Resources representative; and (b) successfully passing POWERHOME SOLAR's standard pre-employment drug and background check." (Doc. No. 4-2 at 2). The offer letter[2] set Mann's salary, obligated PHS to pay $10,000 in moving expense and contained the following term related to severance

> If at any time you are terminated without cause (to be defined in the above-referenced employment agreement) by POWERHOME SOLAR you will receive a continuation of salary for 90 days following the effective date of termination (the "Separation Pay"). Payment of the Separation Pay shall be subject to the terms and conditions outlined in a separation agreement to be negotiated and entered into, by the parties. The Separation Pay shall be paid pursuant to the Company's standard payroll policies.

*Id.*; (Doc. 1 at ¶ 11).[3]

---

[2] The parties agree that the Court may and should consider the Offer Letter, which was referenced and quoted in the Complaint, but was not attached to it. *See O'Neill v. Open Water Adventures Inc.*, No. 3:20-CV-00476-GCM, 2021 WL 2652950, at *2 (W.D.N.C. June 28, 2021) *citing Zak v. Chelsea Therapeutics Int'l Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) ("[C]ourts are permitted to consider the sufficiency of the allegations set forth in the complaint and documents either attached or incorporated by reference into the complaint."); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164–66 (4th Cir. 2016) ("A document that is not attached or explicitly incorporated by reference, but that is authentic and integral to the complaint, may be considered without converting the motion to a Rule 56 motion.").

[3] PHS argues that the reference in this provision to "the above-referenced employment agreement" should be interpreted as requiring "future negotiation" of an employment agreement precluding Plaintiff's claims. However, giving Plaintiff the benefit of all reasonable inferences (if not the plain language) of the agreement, the "above-referenced" employment agreement was simply PHS' "standard new-hire documentation," which would, by definition, not appear to require any further negotiation. Moreover, the parties disagree on whether the terms and conditions of the agreed continuation of salary were to be set in good faith before or after any termination of employment. Again, in the context of a motion to dismiss, this inference would be viewed in Plaintiff's favor.

Plaintiff alleges that after he signed the offer agreement, he arranged for housing in North Carolina,[4] but then was terminated without cause on July 20, 2021, prior to having an opportunity to complete the two agreed contingencies (i.e., signing PHS' new-hire documentation and passing his drug and background check). (Doc. No. 1 at ¶¶ 13-14).[5] Plaintiff alleges that following this termination he was left with "new housing in a new state with no job," (Doc. No. 9-1), and requested payment of the agreed separation pay. PHS refused to pay any severance, leading to Plaintiff's lawsuit. (Doc. No. 1 at ¶ 15).

On November 23, 2021, Plaintiff filed this action asserting claims for breach of contract, violation of North Carolina Wage and Hour Laws, and ERISA § 502(a), as amended, 29 U.S.C. § 1132 et seq. (Doc. No. 1 at ¶ 1).

### III. DISCUSSION

As noted above, Plaintiff's only claim under federal law is his claim under ERISA § 502(a), as amended, 29 U.S.C. §1132 *et seq.*. Therefore, the threshold issue before the Court – on which the Court's subject matter jurisdiction ultimately depends – is whether Plaintiff can maintain his ERISA claim. More specifically, the issue to be decided is whether, as a matter of law, Plaintiff has adequately pled the existence of a benefit plan covered by ERISA's Section 502(a). Because the Court finds that a company's alleged agreement in an employment contract to pay an agreed amount of severance to an individual employee does not establish an ERISA covered plan, Plaintiff

---

[4] Although not alleged in Plaintiff's Complaint, PHS asserts that it paid Plaintiff $8,538.46 for moving expenses (which, of course, would reflect partial performance of the parties' offer agreement, which PHS otherwise claims was not an agreement but merely a prelude to an agreement). (*See* Doc. No. 4-1 at 4).

[5] According to PHS, it broke off the relationship when it "determined that Plaintiff did not have the best skillset for the role." (Doc. No. 4-1 at 6). However, continued consideration of Plaintiff's "skillset" was not one of the two agreed contingencies in the Parties' executed offer agreement.

5

has failed to state a viable claim under ERISA, and this Court lacks subject matter jurisdiction over this action.

ERISA regulates employee benefit plans, not simply employee benefits. *See Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987). In *Fort Halifax*, the Supreme Court established the test for analyzing whether an employee benefit plan exists. According to the *Fort Halifax* test, an employment contract or state statute establishes an ERISA plan if the benefits provided by their very nature require "an ongoing administrative program." Pursuant to this test, the *Fort Halifax* Court concluded that a Maine statute requiring employers to provide a one-time severance payment to employees who lost their jobs as a result of a plant closing did not implicate ERISA. The Court stated that:

> The Maine statute neither establishes, nor requires an employer to maintain, an employee benefit *plan.* The requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation. The employer assumes no responsibility to pay benefits on a regular basis, and thus faces no periodic demands on its assets that create a need for financial coordination and control. Rather, the employer's obligation is predicated on the occurrence of a single contingency that may never materialize. The employer may well *never* have to pay the severance benefits. To the extent that the obligation to do so arises, satisfaction of that duty involves only making a single set of payments to employees at the time the plant closes. To do little more than write a check hardly constitutes the operation of a benefit plan.

*Fort Halifax,* 482 U.S. at 12, 107 S.Ct. 2211.

Thus, an employee benefit plan exists if an arrangement between an employee and an employer requires an ongoing administrative program. Two factors often considered that are most pertinent to the present case are (1) the amount of employer discretion granted under the severance agreement and (2) whether benefits are provided on a regularly occurring basis or on a single occasion. The degree of employer discretion a severance agreement permits is perhaps the most significant factor in deciding whether a contract or statute providing benefits requires an ongoing

6

administrative scheme. *See Blair v. Young Phillips Corp.*, 158 F. Supp. 2d 654, 658–59 (M.D.N.C. 2001). The more discretion a severance agreement grants to an employer, the greater likelihood that the agreement requires an ongoing administrative scheme (and the more reason for invoking ERISA's protective procedural framework).

Thus, the existence of severance payments or separation pay, standing alone, does not invoke the regulatory scheme of ERISA. *See Lomas v. Red Storm Ent., Inc.*, 49 F. App'x 396, 399–400 (4th Cir. 2002) ("[T]he fact that the Agreement addresses the issue of severance benefits is, standing alone . . . insufficient to bring it under the umbrella of ERISA."). While the Fourth Circuit has not addressed the specific issue of individualized separation agreements, the Eighth Circuit has addressed the issue in *Dakota, Minnesota & E. R.R. Corp. v. Schieffer*, 648 F.3d 935, 938 (8th Cir. 2011). In *Schieffer*, the court discussed the relevant statutory language of ERISA:

> As relevant here, ERISA defines an "employee welfare benefit plan" as "any plan, fund, or program... established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purposes of providing for its participants or their beneficiaries ... (B) any benefit described in section 186(c) of this title[other than pension benefits]." 29 U.S.C. § 1002(1). Although severance benefits are clearly among those described in § 186(c), the words "plan" and "program" in § 1002(1) strongly imply benefits that an employer provides to a class of employees. Even more significantly, the plain language of this statute—the reference to "participants or their beneficiaries"—reflects the congressional intent that a covered "plan" is one that provides welfare benefits to more than one person. *See Metropolitan Stevedore Co. v. Rambo*, 515 U.S. 291, 296, 115 S.Ct. 2144, 132 L.Ed.2d 226 (1995) ("Ordinarily the legislature by use of a plural term intends a reference to more than one thing") (quotation and citations omitted).

*Id.* Further, the court in *Schieffer* expressed the well-founded concern that the longstanding control of state law over individual employment contracts between employers and their employees would be significantly impacted if ERISA coverage were to be applied to single employee agreements. ("Congress . . . in ERISA broadly preempted state laws that interfere with multi-employee benefit plans. But Congress has never preempted state laws that regulate and enforce individual

employment contracts between employers and their executives. That remains an important prerogative of the States, no matter how complex a contract may be to administer."). *Id.*

Applying these factors here, Plaintiff alleges that the amount of the severance (90 days of salary) and the duty to pay severance (if Plaintiff was terminated without cause) was agreed so PHS had little discretion in fulfilling its obligations. Also, although the severance was to be paid as ongoing "salary continuation" rather than as a one-time payment, the agreement states that the payments would be made "pursuant to the Company's standard payroll policies," implying that PHS would not need to "administer" the payments beyond simply keeping Plaintiff on the payroll for the agreed period of time. Finally, Plaintiff has failed to allege the existence of any benefit plan beyond his own employment agreement. Indeed, the Complaint alleges that Plaintiff specifically and individually bargained for his severance payment. Accordingly, the Court finds that no ongoing administrative plan was required in connection with the performance of PHS's alleged contractual obligations to Plaintiff and thus no ERISA benefit plan - nor any ERISA claim – can arise from the parties' agreement.

Having determined that Plaintiff has failed to state a claim under ERISA, the Court lacks subject matter jurisdiction over this action, which will be dismissed without prejudice. While, as discussed above in describing the Plaintiff's factual contentions, it appears that Plaintiff has in the context of the lenient review required by a motion to dismiss adequately stated his state law claims,[6] the Court will not reach a decision on the merits of PHS' motion, leaving that

---

[6] Ultimately, the scope of the terms of PHS' alleged obligations will turn on the fact finders' determination of the parties' intent. See *Carolina First Bank v. Stambaugh,* No. 1:10cv174, 2011 WL 6217409, at *5 (W.D.N.C. Dec 14, 2011). ("The heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time.").

determination to the state court in the event that these claims cannot be resolved, the action is refiled and PHS again moves to dismiss on the same grounds.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. This action is dismissed without prejudice because the Court lacks subject matter jurisdiction;
2. Defendant's Motion to Dismiss (Doc. No. 4) is **DENIED** without prejudice as moot**;** and
3. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: February 28, 2022

Kenneth D. Bell
United States District Judge